IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| LISA KREGER, | ) | |
|---|---|---|
| | ) | CIVIL ACTION NO. 3:17-57 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE KIM R. GIBSON |
| v. | ) | |
| | ) | |
| HARTFORD LIFE AND ANNUITY | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| | ) | |
| Defendant/Third-Party | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHARLES S. WILCOX, | ) | |
| | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

## MEMORANDUM OPINION

### I. Introduction

Pending before the Court is a Motion for Summary Judgment filed by Third-Party Defendant Charles Wilcox (ECF No. 25). The Motion is fully briefed (*see* ECF Nos. 26, 27, 42, 43, 44) and is ripe for disposition. For the reasons that follow, the Court will **DENY** Charles Wilcox's Motion for Summary Judgment.

### II. Jurisdiction

The Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the parties are completely diverse and the amount in controversy exceeds $75,000. Venue is proper under 28

U.S.C. § 1391(b) because a substantial portion of the events giving rise to the claims occurred in the Western District of Pennsylvania.

## III. Background

The case involves a dispute between Kreger and Charles Wilcox about which one of them is the rightful beneficiary of a life insurance policy held by Janet Wilcox, now deceased. The Court will briefly summarize the relevant procedural history before turning to the facts.

### A. Procedural History

Kreger filed an action against Hartford Life and Annuity Insurance Company ("Hartford") in the Court of Common Pleas of Somerset County on March 15, 2017. (ECF No. 1 at 2.) Kreger asserted two counts against Hartford: (1) a claim for declaratory judgment that Kreger is the Beneficiary under Ms. Wilcox's Hartford Life Insurance Policy ("Policy") and (2) a claim for breach of contract for Hartford's failure to distribute the Death Benefits payable under Ms. Wilcox's Policy to Kreger upon Ms. Wilcox's death. (*Id.* at 5-14.)

Hartford removed the action to this Court on April 10, 2017. (*Id.*) Shortly thereafter, Hartford filed a Third-Party Complaint for Interpleader against Charles Wilcox who, like Kreger, submitted a claim to Hartford for the Death Benefit payable under Ms. Wilcox's Policy. (ECF No. 2.) Charles Wilcox filed a crossclaim against Kreger, seeking a declaratory judgment that he—rather than Kreger—is the Beneficiary under Ms. Wilcox's Policy. (ECF No. 11.)

Pursuant to a Consent Order entered by the Court on February 16, 2018, Hartford deposited Ms. Wilcox's Death Benefit (totaling $120,490.00) with the Clerk of Court. (ECF No. 33.) The Consent Order discharged Hartford "from any and all liability to Kreger and [Charles]

Wilcox relating to or arising out of the Policy and/or Death Benefit, and all claims, rights, interests, and actions that Kreger and [Charles] Wilcox might otherwise have held against Hartford . . . ." (*Id.* at 2.) Accordingly, Hartford is out of the case. The only remaining issue is whether Kreger or Charles Wilcox is the Beneficiary of the Death Benefit which Hartford paid pursuant to Ms. Wilcox's Policy.

### B. Undisputed Facts[1]

Ms. Wilcox obtained her Policy from ITT Life Insurance, predecessor to Hartford, in 1993. (ECF No. 27 at ¶ 1; ECF No. 42 at ¶ 1.) Ms. Wilcox died on December 6, 2016, as a result of a "sudden cardiac event." (ECF No. 27 at ¶ 6; ECF No. 42 at ¶ 6.) As a result of her death, a Death Benefit of $120,490.00 is payable under Ms. Wilcox's Policy. (ECF No. 27 at ¶ 2; ECF No. 42 at ¶ 2.)

Ms. Wilcox listed Charles Wilcox as the Beneficiary on her application for the Policy. (ECF No. 27 at ¶ 5; ECF No. 42 at ¶ 5.) On March 29, 2015, Ms. Wilcox signed two change of beneficiary forms stating that Ms. Wilcox wished to insert Kreger as her Beneficiary. (ECF No. 26 at 6; ECF No. 42 at ¶¶ 11, 13, 16.) Hartford received these forms and, in a letter dated April 24, 2015, informed Ms. Wilcox that it was "unable to process the request at this time" for two reasons: Ms. Wilcox had submitted old forms which Hartford no longer accepted and the forms she submitted contained corrections, whiteouts, and/or erasures. (ECF No. 27 at ¶ 17; ECF No. 42 at ¶ 17.) The

---

[1] The Court derived the material reproduced in this section from a combination of Charles Wilcox's Motion for Summary Judgment (ECF No. 25), Charles Wilcox's Brief in Support of His Motion for Summary Judgment (ECF No. 26), Charles Wilcox's Concise Statement of Material Facts (ECF No. 27), Kreger's Responsive Concise Statement (ECF No. 42), and Kreger's Memorandum in Opposition to Charles Wilcox's Motion for Summary Judgment (ECF No. 43).

3

April 24, 2015 letter informed Ms. Wilcox that she needed to submit a valid change of beneficiary form to complete her change of beneficiary request. (ECF No. 27 at ¶ 17; ECF No. 42 at ¶ 17.) According to Hartford's letter, Hartford enclosed a valid change of beneficiary form in the notice it sent back to Ms. Wilcox. (ECF No. 27 at ¶ 17; ECF No. 42 at ¶ 17.) Hartford "mailed" the April 24, 2015 letter to Ms. Wilcox's residential address. (ECF No. 27 at ¶ 18; ECF No. 42 at ¶ 18.)

Ms. Wilcox never filed a valid change of beneficiary form. (ECF No. 27 at ¶ 19; ECF No. 42 at ¶ 19.) In fact, Hartford never received any additional correspondence or communication from Ms. Wilcox regarding changing the Beneficiary of her Policy. (ECF No. 27 at ¶ 19; ECF No. 42 at ¶ 19.) Between April 24, 2015 and her death, Ms. Wilcox was mentally sound and capable of filling out a change of beneficiary form. (ECF No. 27 at ¶ 21; ECF No. 42 at ¶ 21.)

Kreger is the executrix of Ms. Wilcox's estate. (ECF No. 27 at ¶ 25; ECF No. 42 at ¶ 25.)

### C. Disputed Facts

Charles Wilcox states that Ms. Wilcox did not intend to change the Beneficiary of her Policy from him to Kreger, as evidenced by the fact that Ms. Wilcox never submitted a valid change of beneficiary form after Hartford informed her that it was unable to process her previous request. (ECF No. 26.) Charles Wilcox emphasizes that 592 days elapsed between the date Hartford mailed Ms. Wilcox the letter and her death. (*Id.* at 8.) According to Charles Wilcox, Ms. Wilcox had notice and ample time to amend her defective change of beneficiary forms to name Kreger as her Beneficiary had she still desired to do so. (*Id.*)

Kreger asserts that Ms. Wilcox intended to change the Beneficiary from Charles Wilcox to Kreger. (ECF No. 42 at ¶ 52.) Kreger contends that in March 2015, she and Ms. Wilcox met with

4

Attorney Ken Johnson in Somerset, Pennsylvania, to discuss Ms. Wilcox's estate. (*Id.* at ¶ 33; Declaration of Kenneth Johnson, ECF No. 44-7 at ¶ 4.) Ms. Wilcox stated during this meeting that she desired to leave her entire estate to Kreger, with the exception of the house in which Ms. Wilcox and Charles Wilcox lived, which Ms. Wilcox would leave to Charles Wilcox. (ECF No. 42 at ¶ 34; ECF No. 44-7 at ¶¶ 9-11.) Attorney Johnson drafted a will consistent with Ms. Wilcox's wishes. (*Id.* at ¶ 36; ECF No. 44-7 at ¶ 13.) Ms. Wilcox informed Attorney Johnson that she would "take care" of her non-probate assets to ensure that Kreger would receive the benefits and proceeds of these assets, including her Hartford Policy. (ECF No. 44-7 at ¶ 15.)

Kreger states that, following the meeting with Attorney Johnson, Ms. Wilcox directed her to "input" her personal information into the change of beneficiary forms so that the forms named Kreger as the Beneficiary and Kreger's daughter as the Contingent Beneficiary. (ECF No. 42 at ¶ 37.) After Kreger filled out the forms, Ms. Wilcox signed and dated them. (*Id.* at ¶ 39.) Matthew Busko, Kreger's boyfriend who was not a listed beneficiary on either form, witnessed Ms. Wilcox execute the change of beneficiary forms. (*Id.* at ¶¶ 40-41.)

Kreger also asserts that Ms. Wilcox never actually received the April 24, 2015 letter from Hartford notifying her that her change of beneficiary request had not been completed. (*Id.* at ¶ 20.) According to Kreger, Ms. Wilcox never mentioned the April 24, 2015 letter, nor that Hartford failed to process her change of beneficiary request, and never stated that she had changed her mind about inserting Kreger as the Beneficiary. (*Id.* at ¶¶ 50-51.) Kreger further states that, up until Ms. Wilcox's death, she repeatedly told Kreger that she intended for Kreger to be the Beneficiary and to receive all Death Benefits payable under the Policy. (*Id.* at ¶¶ 52-53.)

5

Furthermore, Kreger avers that, in her position of executrix of Ms. Wilcox's estate, she has reviewed Ms. Wilcox's financial documents and papers, but has not located the April 24, 2015 letter. (*Id.* at ¶¶ 46-47.)

IV. **Legal Standard**

"Summary judgment is appropriate only where . . . there is no genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law." *Melrose, Inc. v. Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010) (quoting *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 380 n.6 (3d Cir. 2007)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). Issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). Material facts are those that will affect the outcome of the trial under governing law. *Anderson*, 477 U.S. at 248. The Court's role is "not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009). "In making this determination, 'a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.'" *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994)).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the party opposing

summary judgment "may not rest upon the mere allegations or denials" of the pleading, but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 n.11 (1986)). "For an issue to be genuine, the nonmovant needs to supply more than a scintilla of evidence in support of its position—there must be sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant." *Coolspring Stone Supply v. Am. States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir. 1993); *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (noting that a party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted).

V. Discussion

   A. The Court Will Deny Wilcox's Motion for Summary Judgment

As explained below, the Court finds that a genuine issue of material fact exists which precludes the Court from granting summary judgment in Charles Wilcox's favor.

   1. The Substantial Compliance Doctrine

"Pennsylvania follows the equitable doctrine of 'substantial compliance.'" *Cipriani v. Sun Life Ins. Co. of Am.*, 757 F.2d 78, 81 (3d Cir. 1985) (quoting *Provident Mutual Life Insurance Co. v. Ehrlich*, 508 F.2d 129, 132–33 (3d Cir. 1975)). Thus, "when an insured wishes to change the beneficiary [of a life insurance policy], he can do so without strict and literal compliance with the policy terms." *Ehrlich*, 508 F.2d at 132.

7

"Pennsylvania courts will give effect to an insured's intention to change the beneficiary on an insurance policy where, even in the absence of strict compliance with the policy provisions, the insured has made every reasonable effort under the circumstances to comply with those provisions." *Cipriani*, 757 F.2d at 81 (citing *Skamoricus v. Konagiskie*, 318 Pa. 128, 177 A. 809 (1935)); *Massachusetts Mut. Life Ins. Co. v. Curley*, 459 F. App'x 101, 107 (3d Cir. 2012) (quoting *Cipriani*); *see In re Estate of Golas*, 751 A.2d 229, 231 (Pa. Super. Ct. 2000) (quoting *Carruthers v. $21,000*, 290 Pa. Super. 54, 434 A.2d 125 (1981)). Under the substantial compliance doctrine, "[t]he essential inquiry is whether . . . [it has been] . . . shown that the insured intended to execute a change to such an extent that effect should be given it." *Cipriani*, 757 F.2d at 81 (quoting *Prudential Insurance Company of America v. Bannister*, 448 F. Supp. 807 (W.D. Pa. 1978)); *Kerekes v. Primerica, Inc.*, No. 1:14-CV-1665, 2015 WL 12516495, at *5 (M.D. Pa. Sept. 24, 2015) (same).[2]

The Third Circuit has repeatedly stated that district courts should not resolve issues of intent at the summary judgment stage. *See, e.g., Justofin v. Metro. Life Ins. Co.*, 372 F.3d 517, 523 (3d Cir. 2004) (reversing district court's grant of summary judgment and noting that "[g]enerally an insured's state of mind is an issue of fact for the jury."); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007) ("Issues such as intent and credibility are rarely suitable for summary judgment."); *Riehl v. Travelers Ins. Co.*, 772 F.2d 19, 24 (3d Cir. 1985) (citing *Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir. 1981)) ("issues of knowledge and intent are particularly inappropriate for resolution by

---

[2] As Judge Jones recently explained, "[e]vidence of the insured's intent to change the beneficiary . . . is of critical importance" when applying Pennsylvania's substantial compliance doctrine. *Kerekes*, 2015 WL 12516495, at *5.

8

summary judgment, since such issues must often be resolved on the basis of inferences drawn from the conduct of the parties.").

### 2. Presumption of Receipt and the Mailbox Rule

The Third Circuit has explained that "a document is presumed to have reached its destination at the regular time and [to have] been received by the person to whom it was addressed if it was proved to have been properly directed and put into the post office or delivered to the mail carrier." *U.S. Renal Care Inc. v. WellSpan Health*, 709 F. App'x 160, 162 (3d Cir. 2018) (citing *Lupyan v. Corinthian Colleges Inc.*, 761 F.3d 314, 319 (3d Cir. 2014)). The presumption of receipt "is not a conclusive presumption of law." *Lupyan*, 761 F.3d at 319 (quoting *Rosenthal v. Walker*, 111 U.S. 185, 193-94 (1884)). Instead, "it is a rebuttable 'inference of fact founded on the probability that the officers of the government will do their duty and the usual course of business.'" *Lupyan*, 761 F.3d at 319 (quoting *Rosenthal*, 111 U.S. at 193-94). Moreover, while a "strong presumption" of receipt arises when correspondence is sent via certified mail, a "weaker presumption" applies when notice is transmitted "via regular mail, for which no receipt, or other proof of delivery, is generated." *Lupyan*, 761 F.3d at 319 (citing *Santana Gonzalez v. Att'y Gen.*, 506 F.3d 274, 279 (3d Cir. 2007)). Neither party alleges, or has presented evidence, that Hartford sent its April 24, 2015 letter via certified mail. Thus, the Court presumes that Hartford sent the letter via regular mail. Therefore, only a "weak" presumption arises that Ms. Wilcox received the letter.

"The presumption of receipt derives from the longstanding common law 'mailbox rule.'" *Lupyan*, 761 F.3d at 319. "Pursuant to the mailbox rule, once a party proves mailing, the presumption of receipt 'imposes the burden of production on the party against whom it is

9

directed[.]'" *Lupyan v. Corinthian Colleges Inc.*, 761 F.3d 314, 320 (3d Cir. 2014) (quoting *McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 287 (3d Cir. 2006)). "[T]he party the presumption operates against has the burden of producing evidence to rebut the presumption, while the actual burden of persuasion remains [and] does not change." *Lupyan*, 761 F.3d at 320 (citing *McCann*, 458 F.3d at 287). As the Third Circuit explains, "the 'introduction of evidence to rebut a presumption destroys that presumption, leaving only that evidence and its inferences to be judged against the competing evidence and its inferences to determine the ultimate question at issue.'" *Lupyan*, 761 F.3d at 320 (quoting *McCann*, 458 F.3d at 287-88).

In civil cases, a party need only present a "minimal quantum of evidence" to rebut an evidentiary presumption, such as the presumption of receipt under the mailbox rule. *See Lupyan*, 761 F.3d at 320 (citing *McCann*, 458 F.3d at 288). This is because the only effect of an evidentiary presumption "is to require the party [contesting it] to produce enough evidence substantiating [the presumed fact's absence] to withstand a motion for summary judgment or judgment as a matter of law on the issue." *Lupyan*, 761 F.3d at 320 (internal quotation marks omitted) (citing *McCann*, 458 F.3d at 288). Therefore, "a single, non-conclusory affidavit or witness's testimony, when based on personal knowledge and directed at a material issue, is sufficient to defeat summary judgment." *Lupyan*, 761 F.3d at 320-21) (citing *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161–63 (3d Cir. 2009)). Even a self-serving affidavit rebuts an evidentiary presumption. *Lupyan*, 761 F.3d at 321 (citing *Kirleis*, 560 F.3d at 161–63).

## C. A Genuine Dispute of Material Fact Exists

The Court concludes that a genuine dispute of material fact exists because a reasonable jury could conclude that Ms. Wilcox satisfied the substantial compliance doctrine. Kreger presented evidence (1) that Ms. Wilcox signed two change of beneficiary forms on March 29, 2015, naming Kreger as the Beneficiary under her Policy; (2) that Kreger and Ms. Wilcox met with an attorney in March 2015, that Ms. Wilcox told the attorney that she intended to bequeath her entire estate to Kreger (with the exception of the house in which Charles Wilcox lived), and that the attorney drafted a will to give effect to Ms. Wilcox's wishes; and (3) that Kreger was a close friend of Ms. Wilcox and that, up until she died, Ms. Wilcox continued to inform Kreger that she was the Beneficiary under Ms. Wilcox's Policy. Based on the evidence presented by Kreger, a reasonable jury could conclude that Ms. Wilcox satisfied the substantial compliance doctrine and that Kreger is the Beneficiary under Ms. Wilcox's Policy.

The central questions in this case are: did Ms. Wilcox intend to switch in Kreger for Charles Wilcox as the Beneficiary under her Policy? And if so, did Ms. Wilcox do everything reasonable given the circumstances to effectuate the change? The Court is cognizant of the Third Circuit's repeated admonitions that district courts should generally not resolve questions of intent at the summary judgment stage. Accordingly, the Court concludes for summary judgment purposes that Kreger presented sufficient evidence for a finder of fact to conclude that that Ms.

Wilcox intended to name Kreger as her Beneficiary and that she took every reasonable step to do so given the circumstances she faced.[3]

## D. Charles Wilcox's Arguments Fail to Persuade the Court

Charles Wilcox contends that he is entitled to summary judgment because Ms. Wilcox failed to make every reasonable effort to change the Beneficiary of her Policy and thus failed to satisfy the substantial compliance doctrine as a matter of law. (*See* ECF No. 26 at 13.) He relies on the mailbox rule's presumption of receipt and argues that, because he presented evidence that Hartford mailed the April 24, 2015 letter via regular mail to Ms. Wilcox's residential address, a

---

[3] The Court additionally agrees with Kreger's assertion that Kreger has presented at least as much, if not more, evidence as the plaintiff in a similar case—*Kerekes, supra*—who defeated a motion for summary judgment. *Kerekes* involved a dispute between the decedent's wife (the plaintiff) and ex-wife (the third-party defendant) regarding which one of them was the Beneficiary under the decedent's life insurance policy. 2015 WL 12516495 at * 2.

    The decedent applied for, and received, a life insurance policy in 1988 that insured both his life and that of his ex-wife. *Id.* The decedent named his ex-wife as the primary Beneficiary of his life insurance policy. *Id.* The decedent and his ex-wife divorced in 2004. *Id.* Subsequently, the decedent submitted a "Coverage Election Form and Application Agreement." *Id.* The plaintiff and the third-party defendant agreed that the decedent indicated on the form that he wished to continue receiving life insurance coverage for his own life and that he wished to terminate the life insurance coverage he had previously obtained for his ex-wife. *Id.* However, the parties disputed whether the decedent also intended to change the Beneficiary of his own life insurance policy. *Id.* The ex-wife moved for summary judgment. In response, the wife pointed to a handwritten notation the decedent made on the second page of the form, which read "DELETE SPOUSE," and argued that decedent's hand-written instruction not only indicated that the decedent intended to terminate his ex-wife's *life insurance policy*, but also sufficed to give rise to a reasonable inference that the decedent intended to *change the beneficiary of his own life insurance policy* from his ex-wife to the plaintiff. *Id.*

    Judge Jones held that the disputed "issue of intent is clearly a material factual dispute, which precludes the Court from entering summary judgment in favor of [the ex-wife] at this juncture." *Id.* at * 5. Judge Jones further noted that, given the circumstances of the case, summary judgment was inappropriate even though "[p]laintiff has submitted a paucity of evidence in her favor, and relies almost entirely on the handwritten notation and the fact [the decedent] was no longer married [to his ex-wife] . . . ." *Id.* The Court notes that whereas the plaintiff in *Kerekes* presented only the decedent's ambiguous handwritten instruction to "DELETE SPOUSE" to defeat summary judgment, Kreger presented two signed change of beneficiary forms signed by Ms. Wilcox in which Ms. Wilcox explicitly requested that Kreger replace Charles Wilcox as the Beneficiary of her Policy, in addition to the other evidence discussed above.

12

presumption of receipt arises that Ms. Wilcox received the letter. (ECF No. 45 at 3-4.) He further argues that Kreger cannot rebut the presumption of receipt; since Kreger was not the intended recipient of the letter—Ms. Wilcox was—Kreger lacks the personal knowledge required to overcome that evidentiary presumption. (*Id.* at 5-6.) Accordingly, Charles Wilcox contends that, in light of Kreger's inability to rebut the presumption of receipt, Kreger cannot demonstrate a genuine issue of material fact on substantial compliance because it is undisputed that Ms. Wilcox did not resubmit a valid change of beneficiary form during the 592 days between the date of the letter and the date of her death. (*Id.*; ECF No. 26 at 13-14.)

There are two problems with Charles Wilcox's argument. First, the Court rejects Charles Wilcox's assertion that Kreger has failed to present evidence sufficient to support a finding that she has personal knowledge about whether Ms. Wilcox received Hartford's letter.[4] Kreger presented evidence that she and Ms. Wilcox were "close personal friends" and that Ms. Wilcox repeatedly told her that she "intended to leave her assets" to Kreger after she died. (Declaration of Lisa Kreger, ECF No. 44-4, at ¶¶ 2, 4.) Kreger also offered evidence that Ms. Wilcox took her to meet with an attorney in March 2015, that Ms. Wilcox told the attorney that "her intent with respect to the rest of her assets she held at the time of her death was that they were to go to Plaintiff Lisa Kreger," and that the attorney drafted a will to give effect to Ms. Wilcox's wishes. (Declaration of Kenneth Johnson, ECF No. 44-7 at ¶ 12.) Furthermore, Kreger presented evidence that she is the executrix of Ms. Wilcox's estate and that, in her capacity of executrix, she "searched

---

[4] Under Federal Rule of Evidence 602, "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602.

13

Ms. Wilcox's personal effects" and was unable to locate the Hartford letter or "any reference" to the letter in Ms. Wilcox's records. (ECF No. 44-4, at ¶ 40.) Based on the forgoing, the Court finds that Kreger offered sufficient evidence to support a finding that she had personal knowledge. Therefore, Kreger provided the "minimal quantum of evidence" necessary to rebut the evidentiary presumption that Ms. Wilcox received Hartford's letter. *See Lupyan*, 761 F.3d at 320.

Second, Charles Wilcox would not be entitled to summary judgment even if Kreger were unable to overcome the mailbox rule's evidentiary presumption that Ms. Wilcox received the April 24, 2015 letter. The Third Circuit advises that "[t]he essential inquiry" under the substantial compliance doctrine "is whether . . . [it has been] . . . shown that the insured intended to execute a change to such an extent that effect should be given it." *Cipriani*, 757 F.2d at 81. The Court acknowledges that the substantial compliance doctrine imposes a high bar—it requires that the insured make "every reasonable effort under the circumstances to comply" with the policy provisions regarding changing beneficiaries. *Id.* However, when viewed in the light most favorable to Kreger and drawing all reasonable inferences in her favor, Kreger has presented sufficient evidence to support a finding that Ms. Wilcox satisfied substantial compliance. Kreger presented evidence that Ms. Wilcox executed two change of beneficiary forms that named Kreger as her Beneficiary. (ECF No. 44-4, at ¶¶ 16-20.) Moreover, Kreger came forward with evidence that Ms. Wilcox informed Kreger that she submitted the change of beneficiary forms to Hartford in late March/early April 2015. (*Id.* at ¶ 20.) Furthermore, Kreger offered evidence that Ms. Wilcox continued to tell Kreger that she was the Beneficiary of Ms. Wilcox's Policy until her death. (*Id.* at ¶ 28.) Given the robust evidence Kreger presented suggesting that Ms. Wilcox did indeed intend

14

to change the Beneficiary under her Policy, this Court cannot, at the summary judgment stage, hold that Ms. Wilcox failed to achieve substantial compliance as a matter of law.

Answering the question of whether Ms. Wilcox achieved substantial compliance will necessarily be a fact-intensive determination. This question is appropriately reserved for the trier of fact.

## VI. Conclusion

As explained above, a genuine dispute of material fact exists that precludes this Court from granting summary judgment in favor of Charles Wilcox. Accordingly, the Court will deny Charles Wilcox's Motion for Summary Judgment.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LISA KREGER, | ) | |
| | ) | CIVIL ACTION NO. 3:17-57 |
| Plaintiff, | ) | |
| | ) | JUDGE KIM R. GIBSON |
| v. | ) | |
| | ) | |
| HARTFORD LIFE AND ANNUITY INSURANCE COMPANY, | ) ) | |
| | ) | |
| Defendant/Third-Party Plaintiff, | ) ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHARLES S. WILCOX, | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

## ORDER

AND NOW, this 29th day of March 2018, upon consideration of Charles Wilcox's Motion for Summary Judgment (ECF No. 25), and in accordance with the accompanying Memorandum Opinion, **IT IS HEREBY ORDERED** as follows:

1. The Court will **DENY** Charles Wilcox's Motion.

2. The Court observes that discovery is closed, the deadline for filing dispositive motions has passed, and the Court has already held a Post-Discovery Status Conference in this case (*see* ECF No. 36.) Accordingly, the case appears ready for trial.

3. The parties must comply with the Trial Order that follows this Memorandum Opinion.

BY THE COURT:

Kim R. Gibson

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE